UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

MATTHEW J. GLOD,                                    Chapter 13
                                                   Case No.: 13-61372
                                        *Debtor.*
_____

In re:

A.J. BOSMAN                                         Adv. Pro. No.: 13-80020

                                        *Plaintiff,*

v.

MATTHEW J. GLOD,

                                        *Defendant.*
_____

APPEARANCES:

BOSMAN LAW FIRM, LLC                               DANIEL W. FLYNN, ESQ.
*Attorney for Plaintiff*
6599 Martin Street
Rome, NY 13440

DAVID J. GRUENEWALD                                DAVID J. GRUENEWALD, ESQ.
*Attorney for Debtor-Defendant*
P.O. Box 69
Manilus, NY 13104

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

This matter is before the Court for decision following a bench trial[1] on the Adversary

Complaint of Plaintiff A.J. Bosman ("Plaintiff"), wherein Plaintiff seeks a determination of

---

[1] Plaintiff Bosman timely requested a jury trial. Pursuant to 28 U.S.C. § 157(e), three conditions must be met in order for a bankruptcy judge to conduct a jury trial: (1) the proceeding must be one the bankruptcy judge might otherwise have heard under 28 U.S.C. § 157; (2) the district court must have specially designated the bankruptcy court to conduct the jury trial; and (3) the parties must consent. 28 U.S.C. § 157(e) (2012). Plaintiff Bosman thereafter withdrew the request in the absence of Defendant Glod's consent to the same.

nondischargeability against Debtor-Defendant Matthew J. Glod ("Defendant") pursuant to 11

U.S.C. §§ 523(a)(2), (a)(3), and (a)(4).[2]  (The "Complaint," ECF Adv. No. 1.)[3]

Defendant filed a Voluntary Petition for chapter 13 relief on August 19, 2013, wherein

Defendant scheduled as disputed a debt owed to Plaintiff in the amount of $5,000.00.  Plaintiff

thereafter commenced this adversary proceeding on November 27, 2013, by filing the Complaint

seeking to except from the discharge issued to Defendant a debt allegedly owed to Plaintiff in the

amount of $53,334.00 pursuant to §§ 523(a)(2), (a)(3), and (a)(4).  (ECF Adv. No. 1.)  Defendant

filed an Answer to the Complaint on December 16, 2013, therein denying the material allegations

and requesting dismissal of the Complaint.  (ECF Adv. No. 5.)  The Court thereafter issued a

Scheduling Order, which required, *inter alia,* objections to witness qualifications, a joint

stipulation of facts, a list of exhibits and pretrial statements, and copies of exhibits intended to be

offered at trial by November 7, 2014.  (ECF Adv. No. 9.)  The matter came to trial on December

2, 2014,[4] and was continued on December 16, 2014.  After the close of Plaintiff's case, Defendant

unsuccessfully moved for a "directed verdict."[5]  Plaintiff and Defendant filed Post-Trial

---

[2] 11 U.S.C. §§ 101-1532 (2012) (the "Bankruptcy Code").  Unless otherwise indicated, all further section references herein are to the Bankruptcy Code.

[3] Documents filed in the adversary proceeding will be referred to herein as "ECF Adv. No.__."  Documents filed in the main bankruptcy case will be referred to herein as "ECF No. __."

[4] The trial was originally scheduled for November 18, 2014, but the Court adjourned the same to December 2, 2014, due to Plaintiff's failure to timely provide exhibits as required by the Scheduling Order.  Defendant objected to the adjournment, and sought preclusion of the exhibits.  While it is true that once a Defendant raises preclusion, it is Plaintiff's burden to demonstrate that the Rule 26 violation was substantially justified or harmless, *see Design Strategy Inc., v. Davis,* 469 F.3d 284, 297 (2d Cir. 2006) (citing *Finley v. Marathon Oil Co.,* 75 F.3d 1225 (7th Cir. 1996)), Second Circuit precedent provides that sanctions are discretionary even if the court does not find a substantial justification for the violation. *See id.* at 297-98.  In the Court's ruling on the objection, the Court noted that Defendant also failed to comply with the Scheduling Order, having failed to file a pretrial statement prior to the trial scheduled for November 18, 2014.  Accordingly, the Court determined that the requested sanctions were not warranted since neither party complied with the terms of the Scheduling Order.

[5] In a bench trial, the appropriate procedural vehicle for dismissing a case as a matter of law due to Plaintiff's insufficient evidentiary showing is a motion under Federal Rule of Civil Procedure 52(c) ("Rule 52(c)") for judgment on partial findings.  The Court therefore construed Defendant's motion as a Rule 52(c) motion, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.  Rule 52(c) authorizes the Court to enter judgment at any time the Court can make a dispositive finding on the evidence.  The Court determined that Defendant was not entitled to judgment under Rule 52(c) and therefore denied the motion.

Memoranda on January 23, 2015 (ECF Adv. Nos. 37 and 36, respectively), on which date the matter was fully submitted and taken under advisement. For the reasons set forth below, the Court having considered all the pleadings and the evidence adduced at trial, the Court finds in favor of Defendant. As is required by Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052, this Memorandum-Decision and Order sets forth the Court's findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## FACTS

The facts of this matter are highly disputed as evidenced by the limited Stipulation of Undisputed Fact filed by the parties on November 10, 2014. (ECF Adv. No. 19.) The Court's ruling is therefore predicated on the evidentiary record, which consists mainly of testimonial evidence elicited by both sides from five witnesses, including Plaintiff, Timothy Taciak, Michael Bellinger, Brian "Terry" Skinner, and Defendant. (ECF Adv. No. 39.) Although Plaintiff carries the burden and Plaintiff's counsel elicited lengthy testimony at trial regarding the parties' relationship, few material facts were proven with regard to Plaintiff's causes of action under § 523(a).

The record reflects that between 2002 and 2005, Defendant, a licensed master electrician, was hired by Plaintiff, an attorney, to perform certain work on Plaintiff's newly constructed home in Rome, New York. The testimony establishes that, during the initial stages of construction, in

2002, Plaintiff's fiancé, Richard McClimans, served as the general contractor.  Upon the advice of his friend and colleague, Terry Skinner, McClimans selected Defendant's proposal to perform certain plumbing and heating services.  (Skinner Trial Tr. ("TT") 9-10.)  Plaintiff thereafter retained these services.

The relationship between Plaintiff and Defendant was memorialized by two home improvement contracts dated September 2, 2002 (Pl.'s Trial Exs., Ex. 2, "Contract I"), and November 20, 2005 (Pl.'s Trial Exs., Ex. 1, "Contract II"),[6] wherein Defendant agreed to perform certain plumbing and heating services for Plaintiff, in exchange for payment in the amount of $2,472.55[7] pursuant to Contract I and $54,974.59 pursuant to Contract II (collectively, the "Contracts").[8]  The Contracts provided that Plaintiff was to pay Defendant for the materials and labor to be performed, and that Defendant was to furnish all materials and perform the labor described in the respective proposals.  Thus, during the parties' relationship, Plaintiff was to advance monies to Defendant to purchase the materials necessary for the renovations in accordance with the payment schedules identified in the respective Contracts.  The advancements to Defendant were funded by a construction loan Plaintiff obtained from a lending institution, which required the authorization of a general contractor prior to each draw.  (Skinner TT 8, 16.)  Defendant testified that, while the work performed for Plaintiff was a "contract job," each of the Contracts "was broken up by proposals."  (Def. Trial Tr. ("TT") 59.)  In other words, Plaintiff could select or decline certain proposals within each contract, "and that's what happened.  It came to whatever

---

[6] While it appears that Defendant drafted Contract II, which bears Defendant's business heading, Defendant did not sign the same.

[7] The Court notes the contract price of $2,472.55 as stated in Article 3 is not equal to the sum of the two progress payments in the amounts of $1,371.55 and $1,371.00 as stated in Article 4.  (Pl.'s Trial Exs., Ex. 2.)

[8] The Court notes that Plaintiff, rather than McClimans, entered into said Contracts.

the amount was and then after that, [Plaintiff] started adding things that she wanted done or changes." (Def. TT 59.)

Midway through the construction project, Defendant filed for chapter 13 bankruptcy protection on October 15, 2005, assigned case number 05-72431, just prior to execution of Contract II.[9]   Defendant did not list a debt owed to Plaintiff on his schedules in that bankruptcy filing.  Defendant's case was dismissed for failure to make plan payments on June 6, 2007 and thereafter administratively closed on September 20, 2007.  Debtor did not receive a discharge.  At trial, Plaintiff testified that she was unaware of Defendant's first bankruptcy filing at that time and proceeded to enter into Contract II with Defendant.  (Pl. Trial Tr. ("TT") 49.)

Plaintiff testified generally that she was dissatisfied with the speed at which the construction progressed, Defendant's low quality of workmanship, and his use of inferior, aged products.   Plaintiff's largest grievance with regard to the Contracts, however, relates to Defendant's purchase and storage of a boiler which was to be installed in Plaintiff's home in connection with the heating services to be provided by Defendant.   The record is incomplete with regard to the timing of events relating to the same.  In Plaintiff's direct examination, Plaintiff identified a proposal dated November 14, 2002, listing a 200,000 BTU Weil McClain boiler at a cost of $2,150.00.  (Pl. TT 12; Pl.'s Trial Exs., Ex. 3.)  Plaintiff acknowledged that some time after the purchase of this boiler in 2002 (Plaintiff TT 24), Defendant agreed to store the boiler for Plaintiff at no cost to her until the date of installation because Plaintiff had no place to store the boiler herself.  (Pl. TT 25; Def. TT 40.)  Defendant testified that it was his practice to temporarily store boilers and other materials in his unheated workshop.  (Def. TT 40.)  While Plaintiff alleges

---

[9] The Court takes judicial notice of its own docket pursuant to Federal Rule of Evidence 201.

that she "never saw the physical boiler[,]" . . . "[she] knew [Defendant] had retained it [and that] he offered to hold onto it until [she] was ready to install it."  (Pl. TT 4.)    Shortly thereafter, sometime between 2002 and 2003, the construction on Plaintiff's home was halted for approximately three years due to the untimely death of Plaintiff's fiancé (Pl. TT 25; Def. TT 40), after which point Defendant continued to store Plaintiff's boiler free of charge.  (Pl. TT 25.)

Defendant testified that during this period of storage, the packaging containing Plaintiff's boiler was damaged while Defendant's employees were moving materials for other projects, causing the boiler to become exposed.  (Def. TT 40.)  Defendant testified that he observed rust forming on the boiler due to the exposure, and sought to sell the boiler before it deteriorated further. (Def. TT 40.)    Defendant further testified that he sold the boiler "between the second and third year [of storage]" (Def. TT 41), because he believed Plaintiff "was going to want a new boiler anyway. . . ." (Def. TT 40.)

Approximately three years later, upon Plaintiff's decision to recommence construction sometime in 2005 (Pl. TT 25-26; Skinner TT 8), Skinner assumed the role of general contractor as a favor to Plaintiff in order to comply with the policy of the lending institution issuing the construction loan, which required the authorization of a general contractor prior to each draw. (Skinner TT 8, 33.)  Skinner was not compensated for this role.  (Pl. TT 9.)  Shortly thereafter, Plaintiff and Defendant entered into Contract II, dated November 20, 2005, which provided in relevant part that, "[t]he boiler ha[d] been previously purchased by owner and [would] be installed at no charge." (Pl.'s Trial Exs., Ex. 1.)

Plaintiff testified that several months after entering into Contract II, she learned that Defendant sold the previously purchased 200,000 BTU Weil McClain boiler (Pl. TT 8, 26), and contends that she did not give Defendant permission or the authority to sell the boiler at any point

during the period of storage. (Pl. TT 8.) While Defendant concedes that he did not have Plaintiff's

permission to sell the boiler (Def. TT 77), he testified that he spoke with Plaintiff and Skinner

about the sale of the 200,000 BTU Weil McClain boiler prior to entering into Contract II, at which

point Plaintiff agreed to the purchase of a new, more efficient boiler. (Def. TT 41, 73.) Skinner

testified to the same. (Skinner TT 15.) Plaintiff does not dispute that she later agreed to the

purchase of a new, more efficient boiler, which is currently installed in her home. (Pl. TT 9, 28-

29.) A January 2, 2006 invoice identifies a boiler price difference in the amount of $1,750.91, the

additional amount for which Plaintiff was responsible (Pl. TT 13; Pl.'s Trial Exs., Ex. 32, Invoice

No. 5794; Ex. 6, Statement).

While Plaintiff testified to her frustration with the lack of Defendant's timely progress (Pl.

TT 10) and alleged failure to complete the work (Pl. TT 17), Skinner testified that during his tenure

as general contractor, it was his recollection that Defendant completed the heating, plumbing, and

electrical work contracted for under Contract II within a period of five to six weeks. (Skinner TT

17.) Skinner further testified that he witnessed the testing of the heating and plumbing lines, a

static pressure test, and the operation of the boiler once the work had been completed in 2006.

(Skinner TT 18.)

The parties' dispute regarding Defendant's services is compounded by the alleged use of

poor quality of materials and the alleged need for repeated repairs to Plaintiff's home. Plaintiff

testified that she observed at least one light switch with rusted screws. (Pl. TT 17, 39.) Plaintiff

called Timothy Taciak, who testified that his background is that of a carpenter/contractor, with

some experience in electrical, very little heating and some plumbing. (Taciak Trial Tr. ("TT") 55.)

Taciak testified that he had performed certain repair work to Plaintiff's home between 2006 and

2007 (Taciak TT 54), including certain corrections to wiring, venting of the furnace, and a

foundation wall, presumably completed by Defendant.  (Taciak TT 52.)  Taciak testified that he

removed and/or replaced certain switches, wire connectors, and certain piping (Taciak TT 52),

because certain switches and wiring connectors appeared used (Taciak TT 55-56); that is, they

"looked older, older style . . . like they hadn't twisted on before [and that] [s]ome of them had,

like, a plier mark on them."  (Taciak TT 56.)  Taciak further testified that it was his recollection

that he replaced a total of two switches, the value of each "a matter of pennies" (Taciak TT 56),

and roughly six wire connectors, valued at "a dollar apiece."  (Taciak TT 57.)  The record reflects

that the piping Taciak replaced in 2007 was valued at $644.22.  (Pl.'s Trial Exs., Ex. 16.)

Plaintiff also elicited testimony from Michael Bellinger, a heating and plumbing service

tech and installer, who testified that in 2014, he performed service calls, or "no heat calls," for

Plaintiff at her home, which included troubleshooting and changing certain circulators attached to

the replacement boiler.  (Bellinger Trial Tr. ("TT") 64-65, 69, 71.)  Bellinger further testified that

he installed some valves on the radiant heating system in order to isolate a circuit thought to be

leaking.  (Bellinger TT 70.)

The remainder of Plaintiff's Complaint stems from her allegation that Defendant made

fraudulent representations in order to receive draws on Plaintiff's construction loan, thereby

exceeding the quoted price in the Contracts.   Plaintiff alleges that Defendant made a request for

an additional $3,000.00 in January 2006 (Pl. TT 10, 22-23), and another request for an additional

$2,500.00 in April 2006 (Pl. TT 10-11, 22), even though the January 2006 request had been

described to Plaintiff as a "final draw."  (Pl. TT 23.)  Plaintiff cites a January 24, 2006 invoice (the

"January Invoice," Pl.'s Trial Exs., Exs. 6, 32, Invoice No. 5822), which reflects a $3,000.00 "final

draw on heating, plumint [sic] & electrical until finish."  Plaintiff also cites a subsequent April 21,

2006 invoice (the "April Invoice," Pl.'s Trial Exs., Exs. 6, 32, Invoice No. 5902), which reflects a

$2,500.00 "contract draw towards completion."  Plaintiff testified that she made these payments because Defendant "demanded [the] additional funds or he would not do any additional work" (ECF No. 37, pg. 13; Pl. TT 10), and Plaintiff sought to avoid acceleration of the construction loan and to obtain a certificate of occupancy (Pl. TT 10, 23), though Defendant seemingly disputes receipt of said payment.  (Def. TT 61.)   Defendant testified that Plaintiff selected certain "add-ons" to Contract II in the nature of plumbing, heating, and electrical work, which increased costs by approximately $10,000.00.  (Def. TT 60.)  Both parties agree, however, that Defendant ceased work on Plaintiff's home sometime around April 2006 due to a dispute regarding light fixtures (Def. TT 78; Pl. TT 36-37), allegedly before Defendant had completed the requested work.   (Pl. TT 17.)  The Court notes that Skinner testified that he resigned as general contractor in the spring of 2006 due to a dispute regarding Plaintiff's use of funds drawn on the construction loan. (Skinner TT 29-30.)

Plaintiff testified that, upon making the additional payments to Defendant, she made several requests for receipts and invoices reflecting the expenditures already made, which she alleges Defendant failed to provide.  (Pl. TT 18, 20).  Defendant formerly testified in connection with the State Court Action commenced by Plaintiff against him, as further discussed *infra,* however, that he does not obtain certain receipts in the first instance, that many of his records were destroyed by a computer crash and additionally, that it is his practice to destroy the paper records he does keep after three years. (ECF No. 37, Ex. 2, pgs. 27-28; ECF No. 37, Ex. 1, pg. 27; Def. TT 56, 67-68.)   Thus, the only records before the Court in connection with the plumbing and heating services performed for Plaintiff are Defendant's business invoices (Pl.'s Trial Exs., Exs. 3, 4, 5, 6, 32), all of which were introduced into evidence by Plaintiff.  Plaintiff did not provide any documentary evidence reflecting written changes to the Contracts, despite the contract

language requiring such writing (Pl.'s Trial Exs., Exs. 1, 2), though Plaintiff acknowledged in her testimony certain conversations and verbal arrangements with Defendant with respect to the work Defendant was to complete and the storage of certain materials.  (*See* Pl. TT 9, 25, 27, 34.)

Plaintiff commenced a lawsuit against Defendant, individually and doing business as Matt Glod Electric, in New York State Supreme Court, Oneida County on April 12, 2007, wherein Plaintiff sought judgment in the amount of $30,000.00 as a result of an alleged breach of contract, negligence and unjust enrichment. (The "State Court Action," Pl.'s Trial Exs., Ex. 28.)  The parties were engaged in the discovery process when Defendant filed the instant petition for chapter 13 relief on August 19, 2013.  (Pl's Trial Exs., Exs. 30-33; ECF No. 1.)

## ARGUMENTS

Plaintiff seeks a determination that a debt allegedly owed by Defendant is nondischargeable pursuant to §§ 523(a)(2), (a)(3), and (a)(4) on the respective grounds that Defendant obtained money from her through the use of false representation and/or actual fraud, that Defendant failed to identify his debt to Plaintiff in his prior bankruptcy and therefore waived dischargeability of that debt, and that the debt was a result of larcenous conduct.

Defendant contends that Plaintiff's allegations sound in negligence and breach of contract and do not rise to the level of misrepresentation or actual fraud required for a finding of nondischargeability pursuant to  §§ 523(a)(2) or (a)(4).  Defendant fails to respond to Plaintiff's cause of action under § 523(a)(3).

## DISCUSSION

A bankruptcy discharge under § 727(a) is intended to provide the "honest but unfortunate debtor" the opportunity to begin a new life free from debt. *Grogan v. Garner*, 498 U.S. 279, 286-

87 (1991).    Accordingly, denial of discharge pursuant to § 727(b) is "an extreme penalty for

wrongdoing," *State Bank of India v. Chalasani (In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir.

1996), such that "courts narrowly construe the limited exceptions to the discharge of a debt and

resolve any genuine doubts in favor of the debtor."    *Econ. Dev. Growth Enters. Corp. v.*

*McDermott*, 478 B.R. 123, 127 (N.D.N.Y 2012) (citing *Denton v. Hyman (In re Hyman),* 502 F.3d

61, 66 (2d Cir. 2007)).    The extreme nature of § 727(b) therefore requires that a  party seeking to

except a debt from discharge bear the ultimate burden of persuasion and establish such exception

by a preponderance of the evidence.    FED. R. BANKR. P. 4005; *Grogan v. Garner*, 498 U.S. at 288-

89.    The Court will address in turn each of Plaintiff's three grounds for relief pursuant to § 523(a).

## I.        Section 523(a)(2)

Section 523(a)(2)(A) provides for the nondischargeability of a debt resulting from "false

pretenses, a false representation, or actual fraud other than a statement respecting . . . an insider's

financial condition."    11 U.S.C. § 523(a)(2)(A) (2012).    As to Plaintiff's first cause of action,

Plaintiff alleges that Defendant "made misrepresentations to Plaintiff and obtained money from

her on the basis of those misrepresentations and otherwise engaged in actual fraud. . ." such that

the debt is nondischargeable under § 523(a)(2).[10]    (ECF Adv. No. 1, ¶ 5.)    As this Court has

previously noted:

> In cases . . . involving contractor-debtors, there are generally two ways to prove
> fraud or misrepresentation [pursuant to § 523(a)(2)].  First, to show that the debtor
> entered into the contract with the intent of never complying with the terms; or
> second, that there was an intentional misrepresentation as to a material fact or
> qualification when soliciting or obtaining the work.

---

[10] The Complaint does not specify whether Plaintiff's claim is made under subsection (A) or (B); however, based on
the allegations stated in the Complaint, the Court construes the action to be one under § 523(a)(2)(A).  (ECF Adv. No.
1, ¶ 3.)  "[T]he exclusion from paragraph (A) makes clear that the false financial statement exception falls within a
category separate from the false representation or actual fraud exception and is subject to special conditions to be met
before the exception becomes effective. Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive." 4-523
COLLIER ON BANKRUPTCY ¶ 523.08 (2015).

*Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 622 (Bankr. N.D.N.Y. 2010) (internal citations omitted).

### a. Actual Fraud

Actual fraud as used in § 523(a)(2)(A) means common law fraud, provable by showing: (1) a representation made by [the] debtor to the creditor; (2)[the] debtor's knowledge of the falsity when the representation was made; (3) [the] debtor's intent to deceive in making such representation; (4) [the] creditor's justifiable reliance; and (5) [the] creditor's damage as a result.

*Signature Bank v. Banayan (In re Banayan),* 468 B.R. 542, 576 (Bankr. N.D.N.Y. 2012).

In the first instance, the Court does not interpret Plaintiff's cause of action as one for actual fraud because Plaintiff does not allege that Defendant lacked the intent to perform under the respective Contracts at the time of execution. Rather, Plaintiff cites several tasks actually performed by Defendant, albeit below the standard of workmanship Plaintiff desired. Accordingly, even if Plaintiff were proceeding under an actual fraud theory, her claim must fail.[11]

### b. False Representation

In order to establish a prima facie case for false representation under § 523(a)(2)(A), Plaintiff must establish that:

(1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result.

---

[11] As a procedural matter, "an adversary complaint alleging fraud must meet the specificity requirement of Rule 9(b) [of the Federal Rules of Civil Procedure]" as incorporated by Rule 7009 of the Federal Rules of Bankruptcy Procedure. *Santaro v. Sgroi,* 5:10-CV-357, 2010 U.S. Dist. LEXIS 100686, at *10 (N.D.N.Y Sept. 24, 2010).  "To satisfy Rule 9(b), a pleading must "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Id.* (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)). Here, the Complaint and all subsequent filings are devoid of any such specificity.

*Eurocrafters, Ltd. v. Vicedomine,* 1:04-CV-855, 2005 U.S. Dist. LEXIS 10079, at *15 (N.D.N.Y

May 18, 2005) (quoting *Charell v. Gonzalez (In re Gonzalez),* 241 B.R. 67, 71-72 (S.D.N.Y.

1999)), *aff'd* 183 Fed. Appx. 70 (2d Cir. 2006); *see In re Banayan,* 468 B.R. at 574-75.

Plaintiff's false representation grounds are as follows:[12] (1) Defendant made

representations to Plaintiff that she would not have to pay for a boiler pursuant to Contract II

because Defendant still had the 200,000 BTU Weil McClain boiler in his possession; (2)

Defendant made representations to Plaintiff that the new, more efficient boiler would be

compatible with the prior, 200,000 BTU Weil McClain boiler's system components; (3)

Defendant made representations to Plaintiff that he would use new materials in connection with

the work he performed pursuant to Contract II; and (4) Defendant made representations to Plaintiff

regarding a "final draw" on Plaintiff's construction loan, when in fact, that draw was not final.

As to Plaintiff's first ground, Plaintiff relies on her own testimony regarding Defendant's

statements allegedly made to her in 2005 to support her argument that Defendant falsely

represented that Plaintiff would not need to pay additional monies for a boiler. (ECF Adv. No. 37,

pg. 9; Pl.'s TT 27) ("When we were negotiating the contract for the installation of the heating

system, he said, in sum and substance, and you won't have to pay for the boiler because we already

have that, you've already paid for that.") Plaintiff's testimony is not only unsupported by the

evidence, but is inconsistent with the testimony of both Defendant and former general contractor,

Skinner. Plaintiff's allegation therefore cannot serve as a basis for denial of discharge pursuant to

§523(a)(2) absent proof, by a preponderance of the evidence, that "[Defendant] made a false

representation." *Eurocrafters, Ltd.,* 2005 U.S. Dist. LEXIS 10079, at *15.

---

[12] To the extent the Complaint identifies false representations made by Defendant not addressed herein, they are
unsupported by the record and are therefore rejected outright.

Plaintiff also relies on the terms of Contract II, which provide in relevant part that, [t]he

boiler ha[d] been previously purchased by owner and [would] be installed at no charge." (Pl.'s

Trial Exs., Ex. 1.)  Plaintiff argues that "it was understood that the language in the contract referred

to the boiler purchased by the Plaintiff in the Defendant's possession" (ECF Adv. No. 37, pg. 10),

but acknowledges that the testimony from Plaintiff and Defendant is inconsistent with respect to

whether Defendant informed Plaintiff that he had sold the 200,000 BTU Weil McClain boiler prior

to, as Defendant contends, or after, as Plaintiff contends, the parties executed Contract II.  (ECF

Adv. No. 37, pg. 10.)  Plaintiff points to the lack of evidence to support Defendant's contention,

but cites no evidence in support of her own.   Rather, Plaintiff summarily contends that it is

"extremely unlikely that the Plaintiff, an attorney, would knowingly enter into a contract which

contained blatantly false information."  (ECF Adv. No. 37, pg. 10.)  Plaintiff's mere self-serving

statement, which does no more than open the door to conjecture, however, is not enough for this

Court to find that Defendant made a false representation when the parties entered into Contract II.

Furthermore, even assuming Plaintiff was able to establish that Defendant made a false

representation with regard to her first ground, Plaintiff failed to adduce any evidence at trial that

she relied upon such representation to her detriment, where she consented to the purchase of a

new, more efficient boiler, for which she paid the difference in cost, or that such reliance was

justifiable under the circumstances, particularly after a lengthy three year delay in construction.

As to Plaintiff's second ground, Plaintiff also fails to affirmatively establish that Defendant

made a false representation in the first instance.  Plaintiff provides no basis for the Court to find

that the new, more efficient boiler was in fact incompatible with the prior system components.

Bellinger's testimony regarding the troubleshooting and repairs he performed in 2014,

approximately nine years after the 2005 installation, fails to establish the same.  *See Sims v.*

*Roggasch (In re Roggasch),* 494 B.R. 398, 407 (Bankr. E.D. Ark. 2013) ("[E]vidence of negligence or shoddy workmanship does not establish false representation with intent to deceive. The fact that a debtor's negligence caused the debt is insufficient to prove the type of fraud that is dischargeable under [§ 523(a)(2)(A)].").

As to Plaintiff's third ground, there is no evidence that Defendant made any representation to Plaintiff with regard to the use of new materials in connection with the work he performed pursuant to Contract II.  Even if Defendant made such representation, Plaintiff fails to provide conclusive evidence that such representation was false at the time it was made where the testimony adduced at trial fails to prove that Defendant installed used parts in Plaintiff's home.  It is not enough that Plaintiff observed at least one screw which appeared to be rusted or that Taciak observed two light switches and six wire connectors which appeared used given the scope of the project and the timeframe in which such observation was made, particularly after a three year delay in construction.  Absent proof of intent to deceive, the evidence presented fails to demonstrate that Defendant made a false representation as defined by § 523(a)(2)(A).

As to Plaintiff's fourth ground, Plaintiff alleges that Defendant made representations to Plaintiff regarding a "final draw" on Plaintiff's construction loan, when in fact, that draw was not final.  In support of this claim, Plaintiff cites the January Invoice, reflecting a $3,000.00 "final draw on heating, plumint [sic] & electrical until finish" and the subsequent April Invoice, reflecting a $2,500.00 "contract draw towards completion."   Plaintiff argues that the April Invoice demonstrates that the January Invoice was, in fact, not final, but rather, a false representation made in order to receive draws on the construction loan.  *See Ershowsky v. Freedman (In re Freedman),* 427 Fed. Appx. 813, 818 (11th Cir. 2011) (while § 523(a)(2)(A) does not include a written-statement requirement, neither does the statute preclude it).  Plaintiff also contends that Defendant

conditioned the completion of work on receipt of these additional funds, which induced Plaintiff to pay the April Invoice. Plaintiff further asserts that Defendant made representations that he would not charge Plaintiff the cost of the work he performed in connection with Contract II to the extent the cost exceeded the total contract price, citing Defendant's deposition testimony in support thereof.[13]  (ECF Adv. No. 47, pg. 14.) Plaintiff therefore claims that each of these false representations are actionable.

The Court disagrees in light of the testimonial evidence and the demonstrated fluid nature of the parties' relationship. Defendant testified that Plaintiff selected certain "add-ons" to Contract II in the nature of plumbing, heating, and electrical work, which increased costs by approximately $10,000.00. Neither the January Invoice nor the April Invoice identify the specific work to be performed by Defendant. Therefore, in the first instance, Plaintiff has not met her burden of demonstrating that Defendant's use of the term "final draw" was, in fact, a false representation where additional payment would be required to the extent the April Invoice expanded the scope of work to be performed.  Similarly, Plaintiff has failed to show that the Contracts affirmatively established a "total contract price."

Even assuming Defendant made a false representation, the Court cannot infer Defendant's intent to deceive at the time of contracting, despite Plaintiff's contention that Defendant failed to

---

[13] Plaintiff introduced Defendant's deposition testimony under Federal Rule of Civil Procedure ("FRCP") 32(a) by reading certain portions into the record.  FRCP 32(a)(1)(B) provides that "all or part of a deposition may be used against a party . . . to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." FED. R. CIV. P. 32(a)(1)(B).  Defendant's testimony was admissible under Federal Rule of Evidence 801(d)(2). FED. R. EVID. 801(d)(2).  While Plaintiff did not provide the Court with a certified copy of the deposition, FRCP 32(c) provides that a party "may provide the court with the testimony in non-transcript form as well." FED. R. CIV. P. 32(c).  In the absence of a timely objection as to foundation, Defendant waived the same pursuant to FRCP 32(d). FED. R. CIV. P. 32(d).  However, in light of the lack of foundation, the Court considers and weighs Defendant's testimony in conjunction with the whole of the record.  In the absence of a complete transcript, the Court ascribes minimal weight to the cited portions of the deposition read into the record.

complete the work upon alleged receipt of payment, where the record does not affirmatively establish the circumstances surrounding the dissolution of the parties' relationship, or, more specifically, whether or not Defendant was terminated. *Bethpage Fed. Credit Union v. Furio (In re Furio),* 77 F.3d 622, 625 (2d Cir. 1996) (for purposes of § 523(a)(2), intent may be inferred from the totality of the circumstances); *Signature Bank v. Banayan (In re Banayan),* 468 B.R. 542, 576 (Bankr. N.D.N.Y. 2012) ("Because fraudulent intent is rarely admitted by a debtor, courts uniformly recognize that it may be established by circumstantial evidence or by inferences drawn from a course of conduct."). Moreover, Plaintiff, an attorney, failed to demonstrate that her reliance on the contract price as stated in Contract II was justified given the parties' prior deviations from contract terms. *Andrews v. McCarron*, No. 14-1422-bk, 2015 U.S. App. LEXIS 2110, at *3 (2d Cir. Feb. 11, 2015) ("Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case . . . .") (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)). Accordingly, Plaintiff's fourth ground for false representation must fail.

Considering the record as a whole, it is readily apparent that Plaintiff has fallen far short of proving her case under § 523(a)(2)(A). For a false representation claim to be actionable under § 523(a)(2), the debtor's conduct must "involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Kana v. Wintermute (In re Wintermute)*, No. 09-17314, 2010 Bankr. LEXIS 2941, at *8–9 (Bankr. S.D.N.Y. Aug. 25, 2010) (quoting *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71 (Bankr. S.D.N.Y. 1999)). "A finding of an 'intent to deceive' is a finding of fact relating to a subjective state of mind wherein the debtor's credibility is an important factor." *Manufacturers Hanover Trust Co. v. Wendel (In re Wendel),* No. 95-5034, 1996 U.S. App. LEXIS 6070, at *5 (2d Cir. Mar. 29, 1996) (quoting *In re Magnusson*, 14 B.R. 662, 669

(Bankr. N.D.N.Y. 1981)); *In re Banayan,* 468 B.R. at 576.  In the first instance, Plaintiff fails to

prove that Defendant made false representations.  Moreover, Plaintiff fails to establish any facts

which would allow the court to permissively draw an inference that Defendant possessed the

requisite intent to deceive Plaintiff, an attorney.  *Kaplus v. Lorenzo (In re Lorenzo),* 434 B.R. 695,

708 (Bankr. M.D. Fla. 2010) (holding that a misrepresentation made with the intent to deceive a

creditor is the "cornerstone element" in a § 523(a)(2)(A) nondischargeability proceeding).   In this

case, Defendant was a credible witness and much of his testimony was corroborated or consistent

with the testimony of other witnesses.  Further, given the parties' course of dealing, Plaintiff has

failed to prove that she relied on any false representations to her detriment or that such reliance

was justifiable under the circumstances.  Accordingly, Plaintiff's § 523(a)(2)(A) claim is without

merit and must be dismissed.

## II.        Section 523(a)(3)

Plaintiff also relies upon § 523(a)(3) as a basis for relief, due to Defendant's failure to list

Plaintiff as a creditor and schedule the debt allegedly due to her in his 2005 bankruptcy case.

Plaintiff contends that by failing to do so, Defendant has waived his right to discharge this debt in

his current bankruptcy case.

Section 523(a)(3) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 U.S.C. §§
727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt—
    (3) neither listed nor scheduled under section 521(a)(1) of this title [11 U.S.C. § 521(a)(1)],
    with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to
    permit—
        (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection,
        timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the
        case in time for such timely filing; or
        (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection,
        timely filing of a proof of claim and timely request for a determination of dischargeability

of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3)(A)-(B).

Section 523(a)(3) operates to except unlisted or unscheduled debts from discharge in only two situations. "First, § 523(a)(3)(A) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to file a timely proof of claim." *In re Candidus*, 327 B.R. 112, 117 (Bankr. E.D.N.Y. 2005). Section 523(a)(3)(A) protects a creditor's right to file a proof of claim in order to participate in any distribution of assets from the estate. *Premier West Bank v. Rajnus (In re Rajnus)*, No. 03-64277, 2007 Bankr. LEXIS 3109, at *10, (Bankr. D. Or. Aug. 31, 2007). "Under subsection (a)(3)(A), if a debt has not been scheduled in time for the creditor to file a proof of claim in a case in which a distribution is made to creditors, the debt is nondischargeable." *In re Medaglia,* 52 F.3d 451 (2d Cir. 1995). "Second, § 523(a)(3)(B) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to timely exercise his right to obtain a dischargeability determination of debts 'of a kind specified in' §§ 523(a)(2), (4), or (6).'" *In re Candidus*, 327 B.R. at 117; *accord In re Rajnus*, 2007 Bankr. LEXIS 3109, at *8-9 (Section 523(a)(3)(B) protects a creditor who missed the 60-day deadline for filing a nondischargeability complaint imposed by Federal Rule of Bankruptcy Rule 4007(c) because they were not properly scheduled.).

In this case, Plaintiff's reliance on § 523(a)(3) is both misplaced and nonsensical. By arguing that Defendant "waived" his right to discharge the debt in question in his present case by failing to schedule it in his 2005 bankruptcy case, Plaintiff misinterprets both the law and the facts. Because the purpose of § 523(a)(3) is to address when a debt may be excepted from the discharge

granted to an individual debtor and, in effect, to protect creditors from a deprivation of due process,

a creditor's mere assertion of a § 523(a)(3) claim presumes that a discharge has in fact been granted

to the debtor.   In such cases, upon learning of the bankruptcy case, a creditor whose debt was

neither scheduled nor listed may pursue a judicial determination in the nature of a declaratory

judgment determining the dischargeabilty of the debt.   It is in this context that § 523(a)(3) is

operative.   Here, Defendant was not granted a discharge in his 2005 bankruptcy case because that

case was dismissed.   Therefore, any debt that Plaintiff would have sought to have excepted in that

case was not discharged by statutory fiat under § 727.   Accordingly, Plaintiff's § 523(a)(3) claim

is without merit and must be dismissed.

### III.      Section 523(a)(4)

Plaintiff also seeks relief under § 523(a)(4), which excepts from the discharge any debt

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C.

§ 523(a)(4) (2012).   Plaintiff pursues this cause of action under a theory of larceny.

Plaintiff alleges that she advanced money to Defendant to make the purchases necessary

for jobs pursuant to the Contracts and that Defendant failed to use the funds as directed and

converted the funds for his own use.   More specifically, Plaintiff contends that Defendant sold the

boiler that Defendant had agreed to store for Plaintiff, without Plaintiff's knowledge or consent,

and that Defendant converted these proceeds for his own use and benefit.   As a result, Plaintiff

alleges that she suffered damages because she was required to spend additional monies to purchase

another boiler.   Plaintiff further alleges that Defendant falsely charged Plaintiff for new materials

when he knew they were not.

Larceny in the context of § 523(a)(4) "necessitates a showing that the debtor wrongfully took property from the rightful owner with fraudulent intent to convert such property to its own use without the owner's consent." *Santaro v. Sgroi*, 5:10-CV-357, 2010 U.S. Dist. LEXIS 100686, at *19 (N.D.N.Y Sept. 24, 2010) (citations omitted).  Thus, the original taking of the property must be unlawful.  Here, Plaintiff concedes that the amount tendered to Defendant was paid pursuant to the Contracts, or proposals in connection with the Contracts, in anticipation that the funds would be applied towards the services performed by Defendant.  Where the payments were lawfully received pursuant to the Contracts and Defendant credited Plaintiff for the cost of the 200,000 BTU Weil McClain boiler, larceny cannot exist for purposes of § 523(a)(4).  *In re Henderson*, 423 B.R. at 625.  While Plaintiff testified that she advanced money above and beyond the price stated in the Contracts, even after the alleged "final draw," there is no evidence of wrongful taking before the Court.  The testimony adduced at trial is inconclusive as to the reason for Defendant's failure to complete the work upon receipt of Plaintiff's $2,500.00 payment, pursuant to the April Invoice. Plaintiff, therefore, cannot set forth a cognizable cause of action for larceny under § 523(a)(4).

To the extent Plaintiff pursues her § 523(a)(4) cause of action under an alternative theory of embezzlement, the claim must also fail.  In the § 523(a)(4) context, "embezzlement means 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Santaro v. Sgroi*, 2010 U.S. Dist. LEXIS 100686, at *17 (citing *Forest Diamonds Inc. v. Aminov Diamonds LLC*, 06 Civ. 5982, 2010 U.S. Dist. LEXIS 2808, at *14 (S.D.N.Y. Jan. 14, 2010)).  "A debtor's appropriation of funds does not equate to embezzlement absent the intent to defraud." *Northeast Remarketing Servs. v. Guthier (In re Guthier)*, No. 08-33020, 2010 Bankr. LEXIS 2128, at *17 (Bankr. N.D.N.Y. Apr. 9, 2010) (citing

*In re Kressner*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993)).  As discussed *supra,* the record is devoid of evidence as to Defendant's intent to defraud.

For the foregoing reasons, Plaintiff cannot prevail on a § 523(a)(4) claim under any theory. This claim, therefore, must also be dismissed.

## CONCLUSION

Plaintiff seeks to except from Defendant's discharge the debt allegedly owed to her and to continue the State Court Action, currently stayed in New York State Supreme Court, Oneida County.  While extensive testimony was taken at trial, very few material facts were proven with regard to Plaintiff's causes of actions under § 523(a).  Accordingly, Plaintiff failed to meet the burden imposed by § 523(a), such that the Court finds no basis to except from the discharge issued to Defendant a debt in the amount of $53,334.00.  Given the Court's ruling, Plaintiff cannot continue with the State Court Action or otherwise liquidate her claim.  Accordingly, it is hereby

ORDERED, that Plaintiff's claims under §§ 523(a)(2), (3) and (4) seeking exception of the debt owed to her from Defendant's discharge are denied in the amount of $53,334.00.

ORDERED, that Plaintiff's Complaint is dismissed in its entirety.

IT IS SO ORDERED**.**

Dated: April 1, 2015
        Utica, New York

                                        /s/Diane Davis
                                        DIANE DAVIS
                                        United States Bankruptcy Judge